No. 37,113

STATE OF KANSAS, ex rel. HAROLD H. MALONE, County Attorney of Sedgwick County, *Appellee,* v. THE FLEMING COMPANY, INC., *Appellant.*

(192 P. 2d 207)

Opinion filed April 10, 1948.

*Robert R. Hasty,* of Wichita, argued the cause, and was on the brief for the appellant.

*Emmett D. Foley,* deputy county attorney, and *John H. Gerety,* special prosecutor, argued the cause, and *Harold H. Malone,* county attorney, *Sidney L. Foulston, John H. Gerety,* special prosecutor, and *Henry L. Butler,* all of Wichita, were on the brief for the appellee.

The opinion of the court was delivered by

HOCH, J.: The appellant company, defendant below, was enjoined from advertising, offering for sale, and selling cigarettes at less than cost, in violation of the Unfair Practices Act (G. S. 1947 Supp., 50-401 to 50-408, incl.). It appeals from orders overruling its motion to dissolve the temporary injunction, overruling its motion to strike part of the petition and to make the petition definite and certain, and overruling its demurrer to the petition.

The petition, unverified when filed on April 29, 1947, follows:

"Plaintiff for its cause of action against the Defendant states and alleges:

"FIRST: That HAROLD H. MALONE is the duly elected, qualified and acting County Attorney in and for Sedgwick County, State of Kansas.

"SECOND: That the Defendant is a Corporation existing under and by virtue of the Laws of the State of Kansas and has its principal place of business at 125-127 N. Mosley Street, Wichita, Sedgwick County, Kansas.

"THIRD: That the Defendant herein on or about the 21st Day of April, 1947, advertised, offered to sell and sold cigarettes at less than cost as defined in the Laws of the State of Kansas, and that by so doing diverted trade from a competitor; that by said advertising, offering for sale and sale of said cigarettes the Defendant impaired and prevented fair competition and injured public welfare; and with the intent to deceive any purchaser or prospective purchasers or to substantially lessen competition or to unreasonably restrain trade.

"FOURTH: That by virtue of the violation of Section 50-401 and 50-402 of the laws of the State of Kansas, said Plaintiff is entitled to attorney's fees for the preparation and prosecution of said Plaintiff's cause of action herein.

"WHEREFORE, Plaintiff prays that all the acts of advertising, offering for sale and sale of cigarettes at less than cost be enjoined and restrained in the manner provided by Section 50-404 of the Statutes of the State of Kansas, and that the Defendant, its agent, servants, employers, successors, and assigns, and each of them, and all other persons for or on behalf of said Defendant, be perpetually enjoined and restrained from advertising, offering for sale or selling cigarettes at less than cost in or upon the premises herein before described at the usual place of business of the said Defendant, and within the State of Kansas, or at any place in Sedgwick County, Kansas.

"Plaintiff further prays that an injunction be granted at the commencement of this action, without notice, to be in effect until the final determination of this cause or further order of this Court, and that upon the final determination of this cause the said injunction be made permanent and perpetual.

"Said Plaintiff further prays that he have and receive judgment of a reasonable attorney's fee for the benefit of said Plaintiff's attorneys, together with the costs of this action and such other relief as he may be in justice and law entitled.
     "HAROLD H. MALONE,
      "County Attorney.
     "FOULSTON, GERETY AND BUTLER,
      "By: JOHN GERETY,
       "Special Prosecutors.

"Verification filed May 20, 11:44 A. M., 1947.
"State of Kansas,
"County of Sedgwick, ss."

On April 29, the same day, *ex parte* and without notice, a temporary injunction was issued in the district court of Sedgwick county. No bond was required or given. The temporary injunction reads:

"To the Above Named Defendants:

"Whereas, a *verified* Petition and Application for Injunction was filed in this Court by the State of Kansas on the relation of Harold H. Malone, County Attorney of Sedgwick County, Kansas, on the 29th Day of April, 1947, alleged: That the Defendants named in the above caption advertised, offered for sale and sold cigarettes at below cost for the purpose of eliminating competition and/or injuring a competitor with intent to injure public welfare; *and that said acts all took place in Sedgwick County, Kansas;* and that said acts are in violation of Section 50-402 and 50-403 of the Supplement of the General Statutes of 1945, and are in violation of the laws of the State of Kansas; and that said Defendants, their agents, servants, employees, successors, tenants and assigns and all other persons, and each of them should be perpetually enjoined from advertising, offering for sale or the selling of cigarettes at a price lower than cost.

"And Whereas, the application for Injunction heretofore filed by the Plaintiff, and presented to the Court, has been given careful consideration and the Court has been duly advised in the premises.

"Now Therefore, you the above named defendant and your agents, servants, employees, successors, tenants and assigns, and all other persons, and each of you are hereby enjoined and restrained until the final determination of this cause or further order of this Court from advertising, offering for sale or selling cigarettes at a price lower than cost.

"Clair E. Robb,
"Judge.

"Approved:
"Harold H. Malone,
  "County Attorney.
"By: John H. Gerety,
  "Attorneys For the State."                    (Italics supplied.)

It may be noted that the temporary injunction recited that "a verified petition and application for injunction, had been filed." This was a misstatement. The petition had not been verified. It was further recited in the temporary injunction "that said acts all took place in Sedgwick county, Kansas." There was no allegation in the petition upon which to base that statement and since no evidence was taken prior to issuance of the temporary injunction, no justification appears for asserting therein that the alleged acts took place in Sedgwick county.

Following service of the injunction upon the defendant and on dates not shown by the record, the defendant filed a motion to dissolve the injunction for the reason that it was contrary to law and not based on allegations entitling the plaintiff to injunctive relief. Also a motion to strike paragraph 4 from the petition and to make the petition definite and certain in the following particulars:

"Defendant moves the Court to require the plaintiff to make its petition more definite and certain by stating where defendant advertised, how it advertised, with whom it advertised, and if by printed matter, to attach a copy thereof to its petition.

"That plaintiff be required to state where and to whom it offered to sell and the price at which it offered to sell.

"That plaintiff be required to state to whom it sold cigarettes, the price at which it sold them, and if an invoice was issued therewith, to attach a copy of said invoice to the petition.

"That plaintiff be required to state the cost price of cigarettes to the defendant as defined in the laws of the State of Kansas, and state the name of the competitor from whom defendant diverted trade.

"That plaintiff be required to separately state and number its several causes of action.

"That plaintiff be required to state whether the defendant advertised, offered to sell, or sold at wholesale or retail."

The motion to dissolve the injunction, together with the motion of defendant objecting to the appearance of Foulston, Gerety, and Butler, for the reason that said firm had not been employed by the county attorney or by the county commissioners, and therefore had no right to appear in the matter, were heard and overruled, and the temporary injunction previously granted was continued. At this hearing the trial court permitted the plaintiff to amend its petition by adding thereto a verification filed on May 20, three weeks after the temporary injunction had been issued. This verification was as follows:

"The undersigned John H. Gerety, of lawful age, being first duly sworn, states:

"That he is the Special Prosecutor in the above styled cause. That he has read the Petition and Application for Injunction filed herein on the 29th day of April, 1947. That he knows the contents thereof, and that the allegations, statements and averments contained therein are true and correct.

"JOHN GERETY"

On September 10, 1947, hearing was had on the motion to strike and to make definite and certain, at which time the motion to strike the fourth paragraph was sustained, and the motion to make definite and certain was overruled.

On September 19, 1947, defendant's demurrer to the petition and its objection to the authority of the firm of Foulston, Gerety and Butler, or any member thereof, to appear in the matter, were heard and overruled.

Motion to reconsider the ruling on demurrer was overruled and this appeal followed.

Appellant's principal contentions are that the private attorneys who conducted the case were without authority to represent the state or the county attorney and that the entire proceedings were, therefore, a nullity; that the temporary injunction was invalid because the petition was not verified and no bond was given; and that paragraph three, the heart of the petition, was so indefinite and framed in such general terms that it did not advise the defendant as to the acts complained of and did not state a cause of action.

The expressed purpose of the Unfair Practices Act is to prevent the sale—with certain specified exceptions—of merchandise at below cost, either by the retailer or the wholesaler, where such sale or offer to sell is made with the intent and with the result stated in section 50-402, presently to be noted. Section 50-401 defines "cost" and other terms used in the act. The extended and rather complicated definitions need not be recited here. Section 50-402 is as follows:

"It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this act, with the intent, of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce."

Section 50-403 provides that any retailer or wholesaler who sells or offers to sell merchandise in contravention of the act shall be guilty of a misdemeanor and subject to a fine of not more than $500.

Section 50-405 sets out certain exemptions, with the provision that any retailer or wholesaler claiming them shall have the burden of showing that he is entitled thereto.

The instant action was brought under section 50-404, which provides:

"In addition to the penalties provided in this act, the courts of this state are hereby invested with jurisdiction to prevent and restrain violations of this act, and it shall be the duty of the several county's attorneys, in the respective counties, *to institute proceedings in equity to prevent and restrain violations.*" (Italics supplied.)

We are met, at the outset, with the question whether the instant proceeding is civil or criminal. Appellee argues that it is criminal in character. In support of that view, our attention is called to section 50-403 of the Unfair Practices Act, which makes it a misde-

meanor to sell or offer to sell merchandise in contravention of the act, and provides a penalty therefor, and also to the code definition of crimes and criminal offenses. (G. S. 1935, 21-128.) This argument misconceives the question. The question is not whether the Unfair Practices Act has provisions criminal in character, but whether an *injunction* proceeding under section 50-404 is civil or criminal.

Appellee calls attention, further, to the opening words of section 50-404: "In addition to the penalties provided in this act," etc., and from that argues that it was the legislative intent to make an injunction "an additional punishment" for violation of the act. In support of this construction, appellee contends that the words "in addition to" mean "by way of increase or accession to," citing *In re Daggett's Estate,* 9 N. Y. S. 652, 2 Conn. Surr. 230, and *Washington Loan & Trust Co. v. Hammond,* 51 App. D. C. 260, 278 Fed. 569, 571. We have examined the two cases cited, but do not find them helpful to appellee's contention. The Daggett case involved construction of a statute of descent and distribution, which provided that a widow whose husband had died intestate should be entitled to certain property rights "in addition to any interest" which she should receive under other sections of the act. In the Washington Loan case a testator had bequeathed to a legatee a share in the income of a trust and "in addition to the above" certain personal property. Construing those words in connection with other words in the will involved in the controversy, it was held that the bequests were independent of each other, the words meaning "the act or process of adding or uniting." We need not labor the point further. We think that appellee's construction is not only strained but not in line with the act as a whole.

It is noted that section 50-404 does not say that the provision for injunction is made as an "additional penalty," but says that the courts are invested with jurisdiction to enjoin violations of the act, *"in addition to the penalties* provided in the act." (Italics supplied.) Again, section 50-404 specifically refers to the injunction proceeding as one "in equity," and section 50-406 makes the code of *civil procedure* applicable to the Unfair Practices Act as to "the filing and use of affidavits," . . . "the *authority* and *duty* of *officers* as related to any of the above matters, and any and all further acts of civil procedure necessary to the *filing and maintenance of any action*

as provided herein" (italics supplied) and as to other matters not pertinent here.

We find nothing in the Unfair Practices Act to justify taking its injunction provision out from under the rule that injunction is a *civil* suit. It is stated in 43 C. J. S. 779:

"A suit for injunction is a civil suit, governed by rules of procedure applicable to other civil suits; more particularly, it is an equitable remedy, and governed by the rules of procedure governing equity proceedings generally. . ."

Conformably, the general statutory provisions as to injunctions were made a part of *the civil code* (G. S. 1935, 60-1101 to 60-1121, incl.) and not of the criminal code. A proceeding for injunction under section 50-404 being civil in nature, it follows that any statutes which deal only with criminal actions or proceedings are not applicable thereto.

We consider next, appellant's contention that the allegations of paragraph "third," *supra,* of the petition upon which injunction was sought, are general, indefinite, and assert no facts with sufficient particularity to apprise the defendant as to the acts complained of and, therefore, do not state a cause of action for injunctive relief.

A petition for an injunction, like any other petition, must state facts which, if true, will entitle the plaintiff to the relief sought. The general rule is that the petition must make a prima facie case for final relief by alleging facts upon which the injunction is sought. (43 C. J. S. 844-846.)

It is stated in 28 Am. Jur. 457, with supporting cases cited:

"The well-established rule of equity pleading, as to certainty of averment, must be followed. This requires that the facts relied on for injunctive relief be stated in a *direct and positive manner* and *with certainty and precision.* In most cases, general certainty is all that is required, it being sufficient if the allegations distinctly *apprise the defense of the precise case it is required to meet."* (Italics supplied.)

We are cognizant of the rule that mere indefiniteness, uncertainty, or generality in the allegations of a petition do not ordinarily make it demurrable, the remedy being by motion to make definite and certain. (*Kirwin v. McIntosh,* 151 Kan. 289, and cases cited p. 292, 98 P. 2d 160; cases cited in West's Kansas Digest, Pleading, 122 [2]; Hatcher's Kansas Digest, Pleading, § 162.) This rule, however, does not protect, as against demurrer, a petition, the allegations of which are framed in general terms, unless the allegations cover facts material and essential to the statement of a cause of action.

Moreover, as heretofore noted, the appellee successfully resisted appellant's motion to make paragraph "third" definite and certain. It follows under the established rule that the petition is to be strictly construed as against the pleader as to matters covered by the motion. (*Sanik v. Shryock Realty Co.*, 156 Kan. 641, 135 P. 2d 545; *Leeka v. Yount,* 145 Kan. 155, 156, 64 P. 2d 24; *Lofland v. Croman,* 152 Kan. 312, 316, 103 P. 2d 772, and cases there cited.)

Generally, the sufficiency of a bill or a complaint for an injunction may be tested by demurrer or, if the statute so provides, its sufficiency may be attacked by a motion to dissolve the temporary injunction. (43 C. J. S. 871.) Our statute provides for application to vacate or modify either upon the petition and affidavits, upon which the injunction was granted, or upon affidavits on the part of the party enjoined and provides for orders allowing, dissolving or modifying the injunction. (G. S. 1935, 60-1118.) The appellant here presented the issue of sufficiency of the petition, both by demurrer and by motion to dissolve.

Paragraph "third" need not be repeated. Its allegations are in the most general terms. It does not allege whether defendant sold, or offered to sell below cost as a *wholesaler* or as a *retailer;* nor by what method or in what manner it advertised to sell below cost, and does not even set forth the *county* in which alleged unlawful acts took place. In fact, the paragraph does not even conform with the general language of the statute. Under section 50-402, the sales or offers to sell below cost which are declared to be "unfair competition and contrary to public policy, and the policy of this act" are such sales or offers to sell which are made (1) *"with the intent* of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare," and (2) *"where the result* of such advertising, offer, or sale, is to tend to deceive any purchaser or prospective purchaser or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce." (Italics supplied.) The petition omits entirely the essential element of *intent* to unfairly divert trade from a competitor and to impair and prevent competition and injure public welfare.

In support of its contention that the allegations were sufficient to justify issuance of the temporary injunction, appellee cites *Parkhurst v. Investors Syndicate,* 138 Kan. 7, 23 P. 2d 589; *Breweries Co. v. Kansas City,* 96 Kan. 731, 153 Pac. 523; *Wigton v. Donnelly,*

122 Kan. 796, 253 Pac. 400; *Du Bois v. City of Galena*, 128 Kan. 253, 276 Pac. 802; *K. P. Rly. Co. v. McCormick*, 20 Kan. 107. These cases have been examined and are not found to be persuasive here. The Parkhurst case, *supra*, was an action to construe plaintiff's rights as holder of certain certificates and the liability of the defendant which had issued them. Referring to the code provision (Sec. 60-704) that a petition must contain "a statement of facts constituting the cause of action in ordinary and concise language and without repetition," the opinion recites that the petition *did so* state "the rather *peculiar facts constituting the cause of action.*" It was noted in the opinion that the plaintiff alleged ownership of the certificates, and that they had been properly assigned to him; that he had tendered the required transfer fee; that the defendant had unlawfully refused to record the assignments, and other facts constituting the cause of action, not necessary here to recite. Such definite allegations of fact are not comparable with those in the instant petition.

Similarly, in the Breweries Co. case, *supra*, the allegations of fact were far more definite than those we have here. Moreover, in that case there had been no motion to make definite and certain.

In the Wigton case, *supra*, it was held that an order of the trial court sustaining a motion to strike out certain letters attached to the petition, on the ground they were redundant and constituted the pleading of evidence, was not an appealable order. Although dismissing the appeal, this court said that the court did not err in striking the letters, the petition not conforming to the requirements of section 60-704, *supra*. The case has little, if any, pertinancy here.

The Du Bois case, *supra*, was an action to recover from the defendant city for hauling dirt for the city. A motion to make definite and certain was sustained as to certain matters, but was *denied* as to *the ground* that the petition *was indefinite in failing to state whether the contract involved was made with the plaintiff*, or with a representative of the plaintiff. Upon appeal, the denial was upheld on the ground that the *petition did, in fact, specifically allege* that the *contract was made with the plaintiff*.

It is clear that the petition did not apprise the defendant with sufficient particularity as to the unlawful acts which it was alleged to have committed and upon the basis of which injunctive relief

was sought. This conclusion makes it unnecessary to consider the other contentions of the appellant.

The judgment is reversed and the cause remanded with directions to dissolve the temporary injunction.